UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80165-CIV-MARRA

OPTION WIRELESS, LTD.,
an Irish limited liability company,

      Plaintiff,

v.

OPENPEAK, INC.,
a Delaware corporation,

      Defendant.

_____/

## OPINION AND ORDER

THIS CAUSE is before the Court upon Plaintiff/Counter-Defendant's Motion to Dismiss Defendant/Counter-Plaintiff's Counterclaim (DE 6).[1] Counter-Plaintiff OpenPeak Inc. filed its Memorandum in Opposition (DE 8). Counter-Defendant Option Wireless, Ltd, replied. (DE 12). The Court has carefully considered the briefs of the parties and is otherwise fully advised in the premises.

### I. Introduction[2]

      In July 2010, Counter-Plaintiff OpenPeak Inc. was producing a computer tablet product for AT&T. (DE 4 ¶ 5). Seeking embedded wireless data modules for the tablet, Counter-Plaintiff submitted a purchase order to Counter-Defendant Option Wireless, Ltd, for 12,300 units of the modules at the price of $848,700.00. (DE 4 ¶ 4). Section 9 of the purchase order, labeled "**BUYER'S TERMS AND CONDITIONS,**" provided that

> [a]ll purchase orders and sales are made only upon these terms and conditions and those on the front of this document. This document, and not any quotation, invoice, or other Seller document (which, if construed to be an offer is hereby rejected), will

---

[1] For purposes of clarity, the Court will refer to Defendant/Counter-Plaintiff OpenPeak, Inc., only as either Counter-Plaintiff or the Buyer. Likewise, the Court will refer to Plaintiff/Counter-Defendant Option Wireless, Ltd, only as either Counter-Defendant or the Seller.

[2] The Court accepts all of Counter-Plaintiff's allegations as true in determining whether Counter-Plaintiff has stated a claim for which relief could be granted. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

be deemed an offer or an appropriate counter-offer and is a rejection of any other terms or conditions. Seller, by accepting any orders or delivering any products having previously received these terms and conditions, will be deemed to have assented to these terms and conditions, notwithstanding any terms contained in any prior or later communication from Seller, and whether or not Buyer specifically or expressly objects to any of Seller's proposed terms. Buyer's failure to object to any document, communication or act of Seller will not be deemed a waiver of any of these terms and conditions. Any addition or change to these terms and conditions must be specifically agreed to in writing by a duly authorized officer of Buyer before becoming binding on Buyer.

(DE 1-3 at 3 ¶ 9).

The parties agreed that the modules would be delivered in separate shipments. (DE 4 ¶ 6). After Counter-Defendant (the Seller) delivered several shipments, the parties agreed that the Seller would send the remaining units—9,840 modules totaling $678,960.00—in a final shipment to Counter-Plaintiff (the Buyer), contingent on the Buyer putting down a 12.5% deposit payment for the balance due. (DE 4 ¶¶ 6–8). The Seller's invoice, which reflected these terms, also provided that

[t]he Buyer has 14 calendar days from the date of the invoice to contest by registered letter addressed to the Seller any aspect of the invoice and the General Sales Conditions referred to therein relating to the Goods received from the Seller. The Buyer shall be deemed to have accepted the terms of any invoice (including the General Sales Conditions referred to therein) if the Seller fails to receive a notification from the Buyer within such time period.
. . .
In the event of a breach by the Seller of any warranty in relation to the Goods, the Buyer's sole remedy shall be to reject the Goods to which such breach of warranty relates. Upon such a rejection of the Goods, the Seller shall refund to the Buyer that part of the price which relates to such Goods to the extent that it has been paid by the Buyer. Following such rejection and refund, the Buyer shall have no further rights whatsoever in respect of the breach of warranty.
. . .
Without prejudice to [the above clause], and in each case to the fullest extent permitted by applicable laws, (a) the Seller shall not be liable to the Buyer for any indirect or consequential loss, damage, cost or expense of any kind which the Buyer may suffer or incur, which arises out of, or is connected with, a breach by the Seller of these General Sales Conditions or of any other obligation of the Seller (including without limitation any loss of opportunity, loss of production, loss of corruption to data, loss of profits or of contracts, loss of operation time and loss of goodwill or anticipated savings), irrespective of whether the Buyer's claim for recovery in respect

of that loss, damage, cost or expense is (or would but for this provision be) founded in contract, tort (including negligence) or otherwise, and irrespective of whether or not the Seller has been advised of the potential for the loss in question; and (b) in no event shall the liability of the Seller to the Buyer in respect of or in relation to, or in connection with the Goods, whether arising in contract, tort or otherwise, exceed the amount (exclusive of VAT) actually paid by the Buyer to the Seller in respect of the relevant Goods.

(DE 1-4 at 3 ¶¶ 6, 8.1, 8.2). The Buyer paid the deposit, $84,870.00, and the Seller delivered the goods on January 14, 2011. (DE 4 ¶¶ 8–9).

Upon inspecting "a representative sample of the modules" in the final shipment, the Buyer found several defects, and formally rejected the modules on January 24, 2011, because they failed "to conform to material product specifications." (DE 4 ¶¶ 10–11). The Buyer accordingly returned the defective modules on April 12, 2011. (DE 4 ¶ 14). The Seller received the goods and subsequently requested data from the Buyer to prove the modules were not defective. (DE 4 ¶ 15). The Buyer complied. (DE 4 ¶ 15). The Buyer maintains that the Seller has not shown that "the modules were not defective or otherwise conformed to material product specifications." (DE 4 ¶ 15).

The Buyer brings four counts against the Seller, three of which are for breach of contract. These three counts allege that the initial purchase order that the Buyer submitted to the Seller is the controlling written contract between the parties, that the Seller breached the contract by delivering defective modules, and that the Seller's breach caused the Buyer harm in the form of, *inter alia*, causing the Buyer to lose its tablet project with AT&T. The Buyer seeks damages including but not limited to incidental and consequential damages as compensation.[3]

The Seller has moved to dismiss the Buyer's breach of contract claims on the grounds that the purchase order is not the controlling contract, the terms of the controlling contract "explicitly

---

[3] The Buyer's fourth count alleges unjust enrichment. The Seller has moved to dismiss the count because it is inconsistent with the Buyer's allegation that the parties entered into a contract. (DE 6 at 11). The Court need not address the Seller's argument, however, because "[i]t is premature, at this stage of litigation, to require [the Buyer] to make an election of remedies." *Bonilla v. Crystal Graphics Equip., Inc.*, No. 11-21470-CIV, 2012 WL 360145, at *4 (S.D. Fla. Feb. 2, 2012) (citation omitted).

preclude [the Seller's] liability for consequential damages," and, in any event, the Buyer has not properly pleaded its alleged entitlement to consequential damages.[4] For the reasons that follow, the Seller's Motion to Dismiss (DE 6) is denied.

## II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which

---

[4] The Court notes that the Seller has moved to dismiss only the Buyer's prayer for consequential damages. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) applies to "claims," not to requests for a certain type of damages that are "merely the relief demanded as part of a claim." *Hutchings v. Fed. Ins. Co.*, No. 6:08-CV-305-ORL-19KRS, 2008 WL 4186994, at *1 (M.D. Fla. Sept. 8, 2008); *see also Paul Gottlieb & Co., Inc. v. Alps S. Corp.*, 985 So. 2d 1, 8 (Fla. Dist. Ct. App. 2007) (noting that enforcing the liability limitation clause at issue would only bar recovery of consequential damages, not direct and incidental damages). The Seller's appropriate remedy here would therefore be a motion to strike under Rule 12(f); and the Court may treat the Seller's improperly labeled motion to dismiss as a motion to strike if it chooses. *See Hutchings*, 2008 WL 4186994, at *2. The Court does not exercise this authority, however, and construes the Seller's motion as labeled.

relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### III. Discussion

"The elements of a breach of contract action are (1) valid contract; (2) a material breach; and (3) damages." *Kaloe Shipping Co. Ltd v. Goltens Serv. Co., Inc.*, 315 F. App'x 877, 880 (11th Cir. 2009) (quoting *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (per curiam)). At the heart of the Seller's Motion to Dismiss is the argument that the "valid contract" between the parties does not allow for consequential damages; thus, the Buyer's breach of contract claims requesting such damages cannot properly state a claim for relief. To determine what contract controls the dispute between these two parties—and by extension, whether that contract permits recovery of the consequential damages that the Buyer seeks—the Court must engage in "the battle of the forms" governed by Section 2-207 of the Uniform Commercial Code.[5]

### A. Battle of the Forms

Section 2-207 provides that

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

    (a) The offer expressly limits acceptance to the terms of the offer;

    (b) They materially alter it; or

    (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient

---

[5] Because Florida has codified Uniform Commercial Code § 2-207, *see* Fla. Stat. § 672.207 (2012), which is the applicable substantive law in this case, the Court will refer directly to those provisions of the UCC. *See Paul Gottlieb & Co.*, 985 So. 2d at 5.

to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code.

Section 2-207 accounts for today's reality that the traditional common law "mirror image" rule—which foreclosed contractual formation where terms of an offer and acceptance varied—is "both unfair and unrealistic in the commercial context." *Steiner v. Mobil Oil Corp.*, 569 P.2d 751, 757 (Cal. 1977). While the terms of an offer and of an acceptance in today's commercial transactions will rarely "mirror" each other, § 2-207 nevertheless allows parties to form a contract in situations where they reach an agreement and subsequently exchange forms "which purport to memorialize the agreement, but which differ because each party has drafted his form to give him advantage." *Id.* (internal quotations omitted). This is the situation before the Court.

The parties here did not enter into a formal written contract. They engaged in the common commercial practice of a buyer submitting an order, a seller filling the order, and both parties exchanging forms with self-serving boilerplate language. "This is precisely the type of situation in which Article Two of the UCC is utilized to fill the gaps." *Premix-Marbletite Mfg. Corp. v. SKW Chems., Inc.*, 145 F. Supp. 2d 1348, 1354–55 (S.D. Fla. 2001). While both parties here admit that their disagreement over controlling contract terms presents the classic § 2-207 "battle of the forms" scenario, however, neither party employs the proper analysis to determine what those terms should be.

Section 2-207 lays out three ways for parties to form a contract. *See Coastal & Native Plant Specialties, Inc. v Engineered Textile Prods., Inc.*, 139 F. Supp. 2d 1326, 1333–34 (N.D. Fla. 2001) (citing *Jom, Inc. v. Adell Plastics, Inc.*, 193 F.3d 47, 53–54 (1st Cir. 1999)). First, the parties can exchange forms with divergent terms; if the offeree's expression of acceptance or written confirmation is not made "expressly conditional" on the offeror's assent to the additional or different terms, a contract is formed. U.C.C. § 2-207(1). The three-part test of § 2-207(2) would then come

6

into play to determine the precise terms of the contract. Second, if the offeree's expression of acceptance or written confirmation is made "expressly conditional" on the offeror's assent to the additional or different terms, then that acknowledgment is treated merely as a counteroffer. *See Jom, Inc.*, 193 F.3d at 53. A contract could only be formed in that situation upon the original offeror's expression of affirmative acceptance of the counteroffer. Finally, where the first two possible avenues do not result in contract formation, a contract may nevertheless be formed via § 2-207(3) where the conduct of the parties demonstrates a belief that a contractual agreement was formed. *See Premix-Marbletite Mfg. Corp.*, 145 F. Supp. 2d at 1355–56.

By the terms of § 2-207, a contract can only be formed under § 2-207(1) or § 2-207(3)—it cannot be formed under both. If a contract is properly formed under § 2-207(1), § 2-207(2) is applied merely to determine that contract's terms. *See PCS Nitrogen Fertilizer, L.P. v. Christy Refractories*, 225 F.3d 974, 980 (8th Cir. 2000); *Coastal & Native Plant Specialties, Inc.*, 139 F. Supp. 2d at 1334–35, 1337. Section 2-207(2) does not apply where a contract is formed by operation of § 2-207(3). *See Premix-Marbletite Mfg. Corp.*, 145 F. Supp. 2d at 1355 n.10. Courts have applied this analysis in both possible scenarios—contract formation under § 2-207(1) that looks to § 2-207(2) but not § 2-207(3), *see, e.g.*, *Paul Gottlieb & Co., Inc.*, 985 So. 2d 1; *Steiner*, 569 P.2d 751; and contract formation under § 2-207(3) that does not look to either § 2-207(1) or § 2-207(2), *see, e.g.*, *Belden Inc. v. Am. Elec. Components, Inc.*, 885 N.E.2d 751 (Ind. Ct. App. 2008); *PCS Nitrogen Fertilizer, L.P.*, 225 F.3d 974; *White Consol. Indus., Inc. v McGill Mfg. Co., Inc.*, 165 F.3d 1185 (8th Cir. 1999); *Coastal & Native Plant Specialties, Inc.*, 139 F. Supp. 2d 1326. Thus, before this Court can decide what terms govern the contractual relationship between the Buyer and the Seller, the Court must determine how the parties formed their contract.

## B. Formation Under § 2-207(1)

First, the Court looks to § 2-207(1) to determine whether the writings of the parties—here the Buyer's purchase order and the Seller's invoice—established a contract. The Buyer's purchase

order served as the offer in this transaction, expressing the Buyer's desire to purchase a specific number of modules at a specific price. But the application of § 2-207(1) here turns on whether the Seller's invoice constituted an acceptance such that a contract was formed.

The first clause of § 2-207(1) suggests that the invoice did constitute an acceptance of the Buyer's offer because it was "a written confirmation . . . sent within a reasonable time . . . even though it state[d] terms additional to or different from those offered or agreed upon." Fulfilling the first clause, however, does not end the inquiry. After the comma, Section 2-207(1) provides a restriction on contract formation where "acceptance is expressly made conditional on assent to the additional or different terms." The only provision of the Seller's invoice that could be interpreted as making acceptance "expressly conditional on assent to the different terms" reads,

> The Buyer has 14 calendar days from the date of the invoice to contest by registered letter addressed to the Seller any aspect of the invoice and the General Sales Conditions referred to therein relating to the Goods received from the Seller. The Buyer shall be deemed to have accepted the terms of any invoice (including the General Sales Conditions referred to therein) if the Seller fails to receive a notification from the Buyer within such time period.

(DE 1-4 at 3 ¶ 6). To determine whether this provision of the Seller's invoice prevents the formation of a contract under § 2-207(1), the Court looks to other courts that have analyzed the issue.[6]

Provisions that have been interpreted to expressly condition acceptance on assent to additional or different terms, thus preventing contractual formation under § 2-207(1), include one that stated, "Seller's acceptance of Buyer's order and shipments made pursuant thereto are subject to and expressly conditioned upon Buyer's acceptance of the terms and conditions herein . . . ." *See Coastal & Native Plant Specialties, Inc.*, 139 F. Supp. 2d at 1328. Another similar provision read, "Seller's acceptance of any offer by Purchaser to purchase the Products is expressly conditional upon the Purchaser's assent to all the terms and conditions herein, including any terms additional to or

---

[6] The Court notes that the parties did not brief the issue of whether the Seller's invoice constituted an "expressly conditional" acceptance.

different from those contained in the offer to purchase." *See PCS Nitrogen Fertilizer, L.P.*, 225 F.3d at 976. Yet another stated, "Where this agreement is found to be an acknowledgment, if such acknowledgment constitutes an acceptance of an offer such acceptance is expressly made conditional upon Buyer's assent solely to the terms of such acknowledgment, and acceptance of any part of Product(s) delivered by Company shall be deemed to constitute such assent by Buyer." *See Belden Inc.*, 885 N.E.2d at 755. And finally, a provision within a purchase order provided that it was "an acceptance of such offer subject to the express condition that the Seller assent that this Purchase Order constitutes the entire agreement between Buyer and Seller with respect to the subject matter hereof and the subject matter of such offer." *See White Consol. Indus., Inc.*, 165 F.3d at 1191.

Conversely, a provision that has been interpreted to *not* expressly condition acceptance on assent to additional or different terms, thus *not* preventing contractual formation under § 2-207(1), reads, "Execution of this agreement constitutes an acceptance expressly limited to the terms herein and any additional or different terms suggested by Seller are hereby rejected unless expressly agreed to in writing by Buyer." *See Westinghouse Elec. Corp.*, 647 F. Supp. at 898. The court in *Westinghouse* reasoned that the purchase order containing this provision operated as an acceptance "because acceptance here was *not* expressly made conditional on assent to the different terms. [The] language of an 'acceptance expressly limited to the terms herein' does not invalidate the acceptance itself. Rather, that language merely qualifies the acceptance and limits its scope to those 'terms herein.'" *Id.* at 900 (emphasis in original) (citations omitted). This result, the court concluded, was consistent with the policy behind § 2-207: that large-scale business transactions are facilitated by recognizing contracts even though certain terms conflict.

A perusal of the law directs this Court to interpret narrowly the "expressly made conditional" language of § 2-207(1)'s second clause. *See Jom, Inc.*, 193 F.3d at 53 (a "seller's invoice is not deemed 'expressly conditional' under § 2-207 merely because its terms do not *match* the terms of the buyer's offer. Rather, to be deemed 'expressly conditional,' the seller's invoice must place the

buyer on unambiguous notice that the invoice is a mere counteroffer.") (emphasis in original).

Provisions that have prevented contract formation under § 2-207(1) have either tracked the language

of the statute or expressed the intent to condition acceptance in no uncertain terms. As one court has

stated,

> In order to fall within [the Subsection 2-207(1) proviso,] it is not enough that an acceptance is expressly conditional on additional or different terms; rather an acceptance must be *expressly* conditional on the offeror's *assent* to those terms. Viewing the Subsection (1) proviso within the context of the rest of that Subsection and within the policies of Section 2-207 itself, we believe that it was intended to apply only to an acceptance which clearly reveals that the offeree is unwilling to proceed with the transaction unless he is assured of the offeror's assent to the additional or different terms therein. That the acceptance is predicated on the offeror's assent must be directly and distinctly stated or expressed rather than implied or left to inference.

*Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1168 (6th Cir. 1972) (citations and quotations

omitted). Consequently, the Seller's invoice does not prevent the formation of a contract in this

instance because the invoice does not by any terms "expressly condition" acceptance on "assent to

the additional or different terms." Rather, the invoice merely requests that the Buyer contest any

unwelcome terms within a specified time period (14 calendar days); otherwise, "The Buyer shall be

deemed to have accepted the terms of any invoice . . . ." The Court does not interpret this request as

expressly conditioning acceptance on assent to the additional or different terms because finding

otherwise would require ignoring § 2-207(1)'s specific language and inferring the Seller's intent.[7]

Moreover, in other cases dealing with provisions that set deadlines for objections to terms, courts

have only found the provisions to "expressly condition" acceptance on assent to additional or

different terms where the provision included "expressly conditional" language *in addition to* the

deadline for objections. *See, e.g.*, *PCS Nitrogen Fertilizer, L.P.*, 225 F.3d at 976; *Coastal & Native*

---

[7] At least two courts have chosen to interpret § 2-207(1) more broadly. *See Dorton*, 453 F.2d at 1168 n.5. The majority of courts, however, have explicitly rejected this broader interpretation. *See Steiner*, 569 P.2d at 762–63 (citing *Ebasco Servs. Inc. v. Penn. Power & Light Co.*, 402 F. Supp. 421, 437–38 (E.D. Pa. 1975)).

*Plant Specialties, Inc.*, 139 F. Supp. 2d at 1328. The Seller here included the deadline for objections, not the language that would have unequivocally expressed an intent to condition acceptance on the Buyer's assent to the conflicting terms. Thus, with the parties having formed a contract under § 2-207(1), the Court turns to § 2-207(2) to interpret that contract's terms.

### C. Terms Under § 2-207(2)

The parties do not dispute that they are both merchants within the context of the statute. (DE 6 at 6). Subsection (2) states that "[b]etween merchants" any additional terms set forth in the acceptance become part of the contract unless (a) the offer expressly limits acceptance to the terms of the offer; (b) the terms materially alter the contract; or (c) notification of objection to the terms has already been given or is given within a reasonable time after notice of them is received. Here, the terms and conditions of the Seller's invoice bar the Buyer from recovering consequential damages. The Buyer's purchase order is silent on the issue. Both parties argue at length over whether the Buyer's purchase order "prospectively" objected to any conflicting provisions the Seller might introduce, *see* § 2-207(2)(a), or whether the Buyer's purchase order provided "notification of objection" to the Seller's additional terms, *see* § 2-207(2)(c). The Court need not address these arguments, however, because both parties admit that the terms of the Seller's invoice "materially alter" those of the Buyer's purchase order.[8] (DE 6 at 9; DE 8 at 7–8). Because subsection (2) is phrased in the disjunctive, additional terms do not become part of the contract if *any* of subsection (2)'s exceptions apply. *See Westinghouse Elec. Corp. v Nielsons, Inc.*, 647 F. Supp. 896, 900 (D. Colo. 1986) (citing *Steiner*, 569 P.2d at 759).

In admitting that the terms of the Seller's invoice materially alter the Buyer's terms, the Seller relies on *Dependable Component Supply, Inc. v. Pace Electronics Inc*, 772 So. 2d 582 (Fla. Dist. Ct.

---

[8] The Seller also admits that the terms of the Buyer's purchase order "expressly limit acceptance to the terms of the offer . . . ." (DE 6 at 9). As explained above, the Court does not address this issue because both parties admit that the additional terms in the Seller's invoice materially alter the terms in the Buyer's purchase order.

App. 2000), for the proposition that in situations where the terms of an acceptance materially alter those of the offer, "Courts look to the parties' respective course of conduct." (DE 6 at 9). The Court finds the Seller's reliance on *Dependable* misplaced.

*Dependable* dealt with a pair of merchants that had conducted business using conflicting boilerplate language on various occasions. When the buyer rejected one of the seller's deliveries as nonconforming and unacceptable, the court was faced with incompatible venue provisions in the parties' writings. The court turned to § 2-207 to resolve the conflict. In finding that the seller's writing operated as an acceptance under § 2-207(1), the court noted that although the writing expressed that it was "conditional on buyer's assent to its additional terms"—which would normally preclude contractual formation under § 2-207(1)—subsection (1)'s limitation did not apply because the seller did not wait for the buyer's assent before tendering performance. The court accordingly found that a contract had been formed by the parties under § 2-207(1). To determine the terms of that contract, § 2-207(2) should have been the next step. After stating that subsection (2) "seems to supply an answer" to the conflict, however, the court turned to subsection (3), concluding that the buyer's conduct manifested an intent to object to an additional term in the seller's invoice. The *Dependable* court cites no authority justifying its reliance on subsection (3) and an analysis of the parties' conduct. In fact, the entirety of the *Dependable* opinion cites only one decision, *Eastern Cement v. Halliburton Co.*, 600 So. 2d 469 (Fla. Dist. Ct. App. 1992), a case in which the court found a contract to be formed under subsection (1). The *Eastern Cement* opinion neither references subsection (3) nor looks to the conduct of the parties to determine the relevant contract's terms.

Because the Court does not find *Dependable* persuasive on the Seller's proposition, the Court does not "look to the parties' respective course of conduct" and instead determines the terms of the parties' contract by turning to the "knock-out" rule borne from Comment 6 to § 2-207:

> Where clauses on confirming forms sent by both parties conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which

is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract. The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree, and terms supplied by this Act, including subsection (2).

Comment 6 suggests that conflicting terms in exchanged writings "must be assumed to constitute mutual objections" to each other causing a "mutual knockout" of both parties' terms. *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1578–79 (10th Cir. 1984). The UCC's "gap-filler" provisions fill in the blanks. *Id.*

Here, the parties do not dispute that the provision in the Seller's invoice barring the recovery of consequential damages conflicts with the Buyer's purchase order. Because the conflict results in a "mutual knockout" of the parties' terms, the Court finds that the UCC's "gap-filler" (Florida Statutes §§ 672.714–672.715 (2011)), which permits the recovery of consequential damages, is read into the parties' contract.[9] Consequently, the "valid contract" between the parties does not preclude the Buyer from recovering such damages, and the Seller's motion to dismiss cannot be granted on

---

[9] Florida Statutes §§ 672.714–672.715 provide, in pertinent part,

Section 672.714: Buyer's Damages for Breach in Regard to Accepted Goods

(1) Where the buyer has accepted goods and given notification he or she may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3) In a proper case any incidental damages and consequential damages under the next section may also be recovered.

Section 672.715: Buyer's Incidental and Consequential Damages

(2) Consequential Damages resulting from the seller's breach include:

    (a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise.

that ground.

## D. Formation Under § 2-207(3)

The Seller, relying on *Premix-Marbletite Manufacturing Corp. v. SKW Chemicals, Inc.*, 145 F. Supp. 2d 1348 (S.D. Fla. 2001), states that § 2-207(3) "must be applied by the Court here to determine the terms of the parties [sic] contract." (DE 6 at 7). For the reasons set forth above, the Court disagrees.

Section 2-207(3) allows for the formation of a contract where "[c]onduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale *although the writings of the parties do not otherwise establish a contract*." (emphasis added). Here, the writings of the parties do establish a contract under § 2-207(1) because the Seller's invoice does not expressly condition acceptance on the Buyer's assent to the conflicting terms. *Premix* provides no support for the Seller's position because *Premix* did not analyze whether the parties formed a contract under § 2-207(1). Rather, the court in *Premix* began its § 2-207 analysis by concluding that "[t]he parties did not enter into a formal written contract for the sale of [goods]" and that "the agreement for the sale of [goods] existed by virtue of the parties' conduct, not by the virtue of the exchange of forms." *Premix-Marbletite Mfg. Corp.*, 145 F. Supp. 2d at 1354–55. The court did not analyze whether the seller's invoice expressly conditioned acceptance on assent to different terms and instead proceeded directly to a conclusion that the parties' conduct established a contract under § 2-207(3). This Court need not address whether the conduct of the parties here formed a contract because their writings established a contract under § 2-207(1).

## E. Seller's Remaining Arguments

Arguing in the alternative, the Seller suggests that the Buyer's breach of contract counts should be dismissed because 1) the Buyer has failed to plead the existence of a specific warranty that the Seller breached (DE 6 at 7–8); and 2) the Buyer has failed to properly plead a cause of action for consequential damages because the Buyer "wholly failed to allege that its alleged loss resulted from

general or particular requirements and needs of which [the Seller] at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." (DE 6 at 10–11). The Court rejects both arguments as premature at the pleading stage. *See Hutchings v. Fed. Ins. Co.*, No. 6:08-CV-305-ORL-19KRS, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008) ("the propriety of consequential damages is a fact intensive inquiry which is inappropriate at the pleading stage.") (citations omitted). The Buyer's allegations that the Seller's modules are defective and that the Buyer lost the AT&T project are sufficient to survive the Seller's motion to dismiss.

## IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff/Counter-Defendant's Motion to Dismiss Defendant/Counter-Plaintiff's Counterclaim (DE 6) is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 5th day of December 2012.

 

_____

KENNETH A.  MARRA
United States District Judge