UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80165-CIV-MARRA

OPTION WIRELESS, LTD.,
an Irish limited liability company,

    Plaintiff/Counter-Defendant,

v.

OPENPEAK, INC.,
a Delaware corporation,

    Defendant/Counter-Plaintiff.
_____/

## OPINION AND ORDER

This cause is before the Court upon Plaintiff/Counter-Defendant Option Wireless, Ltd's Motion for Summary Judgment (DE 44); and Defendant/Counter-Plaintiff OpenPeak Inc.'s Motion for Summary Judgment (DE 46). Both motions are briefed and ripe for review. The Court has considered the briefs and the record, and is otherwise advised in the premises.

### I. Introduction

This case stems from alleged breaches of a contract involving electronic modules designed to provide wireless connectivity to computer tablets (similar to iPads and Kindles). Unless otherwise noted, the following facts are undisputed.

In July 2010, Defendant/Counter-Plaintiff OpenPeak Inc. ("OpenPeak") was developing a computer tablet for AT&T. (DE 4 at 12 ¶ 5) ("Counterclaim"). Seeking a telecommunication part known as a GTM501 module to provide wireless connectivity for the tablet, OpenPeak submitted a purchase order to Plaintiff/Counter-Defendant Option Wireless, Ltd ("Option") for 12,300 modules at the price of $848,700.00. (Counterclaim ¶ 4). The module's key function was to communicate with wireless networks, i.e., connect the tablet to a wireless network.

The modules were to be delivered in separate shipments. (Counterclaim ¶ 6). After Option delivered the first few shipments, the parties agreed that Option would send the remaining

units—9,840 modules totaling $678,960.00—in a final shipment to OpenPeak, contingent on OpenPeak putting down a 12.5% deposit payment for the balance due. (Counterclaim ¶¶ 6–8). OpenPeak paid the deposit, $84,870.00, and Option delivered the goods on January 14, 2011. (Counterclaim ¶¶ 8–9).

OpenPeak alleges that shortly after this final shipment, one of its radio frequency engineers tested a sample of the modules and found that a number of the modules failed to meet one or more of Option's specifications. (DE 48, Attach. 1 ¶¶ 4–13) ("Sinsathitchai Aff."). According to OpenPeak, the engineer's discovery led OpenPeak to reject the modules on January 24, 2011. (Counterclaim ¶¶ 10–11). The goods were allegedly returned to Option on April 12, 2011. (Counterclaim ¶ 14). OpenPeak claims that it lost the AT&T project because of Option's allegedly defective modules. (Counterclaim ¶ 28).

Seeking the outstanding balance due on the contract plus interest, Option brings four counts against OpenPeak: Breach of Contract (Count I); Open Account (Count II); Goods Sold and Delivered (Count III); and Account Stated (Count IV). Openpeak, seeking incidental and consequential damages including, *inter alia*, those resulting from the loss of the AT&T Project, brings four counterclaims against Option: Breach of Contract (Count I); Breach of Contract–Loss of AT&T Project (Count II); Breach of Contract–Partial Shipment of Modules (Count III); and Unjust Enrichment (Count IV).[1] The parties have filed cross-motions for summary judgment. These are the motions presently before the Court.

## II. Legal Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material

---

[1] OpenPeak admits that its unjust enrichment claim (Count IV) is rendered moot by this Court's previous conclusion that a contract exists between the parties. (DE 59 at 13).

fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50.

### III. Discussion

"The elements of a breach of contract action are (1) valid contract; (2) a material breach; and

(3) damages." *Kaloe Shipping Co. Ltd v. Goltens Serv. Co., Inc.*, 315 F. App'x 877, 880 (11th Cir. 2009) (quoting *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (per curiam)). The Court has already concluded that a valid contract exists between the parties. (DE 19). Determining whether any *breach* occurred, however, necessarily turns on identifying the specifications with which the modules were required to comply.

The parties do not dispute that the modules had to meet the technical specifications published on Option's website. But there are various specifications referenced on Option's website—a "Datasheet," an "Integration Manual," and the 3GPP global telecom industry standards—and the parties cannot agree on which of these "specifications" controls.[2] According to OpenPeak, Option provided the specifications for the modules in the Datasheet and Integration Manual. (Sinsathitchai Aff. ¶ 7). According to Option, the specifications for the modules are contained in the Datasheet and the 3GPP global telecom industry standards. (DE 1 ¶ 22 ("Option's Complaint")); (Schaballie Dep. at 153–54, 157).[3] These conflicting positions present a factual dispute that cannot be resolved at the summary judgment stage. The cross-motions for summary judgment are accordingly denied because a genuine issue of material fact exists as to which specifications dictate the module's requirements.

The Court also concludes that it is unnecessary to address whether the parties' contract was an "installment" contract or whether, if it was not an installment contract, the modules constituted "commercial units." These issues can be resolved by the ultimate trier of fact or through a Rule 50 motion for judgment as a matter of law. The parties' remaining issues all stem from assumptions as

---

[2] The Datasheet, the Integration Manual, and the 3GPP standards all set forth specifications for, *inter alia*, the modules' connectivity, i.e., the modules' ability to connect (and stay connected) to a wireless network. This connectivity is measured by testing the modules for certain levels and comparing those test results to the ranges set forth in the specifications. (Sinsathitchai Aff. ¶ 6). The ranges vary among the Datasheet, the Integration Manual, and the 3GPP standards, and whether the modules conform to a specification necessarily turns on which specification—and by extension, which range—controls.

[3] While the parties appear to agree on application of the Data Sheet as a controlling specification, they do not agree on whether the modules conformed to that specification. This also raises a genuine issue of material fact for trial.

to which specifications control (e.g., whether OpenPeak waived its objection to the modules by failing to particularize defects), present additional questions of fact (e.g., whether a breach by Option proximately caused OpenPeak's loss of the AT&T Project), or both (e.g., whether alleged defects substantially impaired the value of the modules). The Court accordingly concludes that resolution of these issues is premature at this time.

As to the parties' cross-motions to strike expert testimony (DE 70; DE 76), the Court concludes that reopening expert discovery should sufficiently address any issues raised. Both motions (DE 70; DE 76) are accordingly denied without prejudice. Expert discovery shall be reopened until September 2, 2013 for the limited purpose of allowing the parties to depose Wisuit Sinsathitchai and Bernard Schaballie.

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff/Counter-Defendant Option Wireless, Ltd's Motion for Summary Judgment (DE 44) is **DENIED.** Defendant/Counter-Plaintiff OpenPeak Inc.'s Motion for Summary Judgment (DE 46) is also **DENIED.** The parties' cross-motions to strike expert testimony (DE 70; DE 76) are **DENIED WITHOUT PREJUDICE.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 24th day of July, 2013.

_____
KENNETH A. MARRA
United States District Judge